STATE of Maine

v.

Anthony J. DADIEGO, Jr.

Supreme Judicial Court of Maine.

Argued May 11, 1992.
Decided Dec. 7, 1992.

Stephanie Anderson, Dist. Atty., Jane Elizabeth Lee (orally), Asst. Dist. Atty., Portland, for plaintiff.

Martin J. Ridge (orally), Beagle, Pearce, Feller & Ridge, Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD and COLLINS, JJ.

COLLINS, Justice.

Anthony Dadiego appeals the sentences imposed as a result of his conviction on four counts of aggravated theft by deception, 17–A M.R.S.A. § 354, entered in the Superior Court (Cumberland County, *Brodrick, J.*) after a plea of guilty. He contends that the court improperly imposed consecutive probation terms, and that the restitution award is ambiguous and exceeds the court's authority. Finding no merit in his contentions, we affirm.

Dadiego was indicted on four counts of aggravated theft by deception and one count of theft by misapplication. Dadiego withdrew an earlier plea of not guilty and pleaded guilty to all four theft by deception counts; in return, the misapplication count was dismissed. The charges arose out of Dadiego's course of conduct as a Manager of C.N. Brown's Big Apple Store in Brunswick. Over a period of several months, Dadiego had appropriated about $207,000 from the store by altering lottery pay-out reports.

Following Dadiego's plea, the court ordered a presentence investigation. The report revealed that Dadiego had a number of convictions for theft offenses and habitually used cocaine at the time of the offenses. At the sentencing hearing, the State proposed consecutive sentences, in the form of a lengthened probation period. After some discussion, all concurred that consecutive sentences were permitted in the circumstances at bar. The defense argued for a single sentence with a short term of incarceration and a longer probation period, so that more restitution could be made. Dadiego, himself, indicated a willingness to serve a long probation term and pay restitution. After considering this testimony and the report, the court sentenced Dadiego as follows: 10 years on count one, 5 years suspended and 4 years of probation; 5 years on counts two through four to be served consecutively, all suspended and 4 years of probation on each. It also ordered that Dadiego pay restitution during his probationary term at a specified weekly rate or a percentage of his income, whichever was higher.

I.

Dadiego contends that the Superior Court erred by ordering that his sentences run consecutively. As Dadiego concedes, 17–A M.R.S.A. § 1256(2) provides that sentences may run consecutively when, *inter alia,*

> the seriousness of the criminal conduct involved in either a single criminal episode or in multiple criminal episodes or the seriousness of the criminal record of the convicted person, or both, require a sentence of imprisonment in excess of the maximum available for the most serious offense.

17–A M.R.S.A. § 1256(2)(D) (1983).[1] The court found that the thefts could be called a single criminal episode, but that consecutive sentences were warranted because of the duration of the conduct and sum of money involved and because of Dadiego's criminal record. Dadiego contends that, because his offense consisted of a single criminal episode, his sentence should not exceed the maximum allowable for a single conviction of aggravated theft, 10 years incarceration. *See* 17–A M.R.S.A. §§ 362(2)(A), 1252(2)(B) (1983).

▪ We do not agree with the Superior Court's assessment that Dadiego's conduct in altering lottery pay-out reports on a daily basis for a ten month period constitutes a single episode. Although undoubtedly accomplished as a continuing scheme, Dadiego's thefts required a new, conscious decision to engage in criminal behavior with each report. His behavior was not an episode, but episodic in that relatively minor individual criminal acts combined to tell the story of a scheme to defraud his employer of over $200,000.

▪ We do agree, however, that the imposition of consecutive sentences is warranted in this situation. 17–A M.R.S.A. § 1256(2) allows the court to specify that sentences are to run consecutively, whether the criminal conduct was a single episode or multiple episodes, based on the seriousness of the crime or the defendant's record. As the sentencing court concluded, this case is "unusually serious," in terms of the duration of the criminal conduct and the amount of money taken. *See State v. Michaud,* 590 A.2d 538 (Me.1991). Dadiego also had a criminal record. On these facts, we cannot conclude that the court abused its discretion in ordering consecutive sentences.

At oral argument, Dadiego contended for the first time that it was inappropriate for the State to base his sentence on the aggregation of offenses pursuant to 17–A M.R.S.A. § 352(5)(E). Dadiego's objections to the proceedings pursuant to 17–A M.R.S.A. § 352(5)(E) should have been raised before trial. *See* M.R.Crim. P. 12(b)(2). We will not consider this argument for the first time on appeal. *See id.* (failure to object constitutes waiver).

II.

▪ Dadiego next contends that the court lacked authority to impose consecutive probation periods. Although we have held that consecutive split sentences violate 17–A M.R.S.A. § 1203(1), we have not addressed the application of consecutive terms of probation. *See State v. Keefe,* 573 A.2d 20 (Me.1990); *State v. Parks,* 544 A.2d 1269 (Me.1988); *State v. Whitmore,* 540 A.2d 465 (Me.1988).

The reasoning behind disallowing consecutive split sentences is that "separation of the incarceration and probationary periods of split sentences is not authorized by statute." *Whitmore,* 540 A.2d at 467; *see* 17–A M.R.S.A. § 1203. The situation is quite different, however, when there is no term of incarceration associated with the probation term. The sentences imposed on counts two through four are not split sentences, but fully suspended terms, involving only probation. *See* 17–A M.R.S.A. § 1152(2)(D) (1992 Supp.) (authorizing such sentences). Section 1203 is entitled "Split Sentences" and appears not to apply to terms of probation only.

17–A M.R.S.A. § 1256(8) allows consecutive terms of probation.[2] It precludes a

---

**1.** 17–A M.R.S.A. § 1256(3) (1983) provides limitations on when consecutive sentences may be imposed.

   3. A defendant may not be sentenced to consecutive terms for crimes arising out of the same criminal episode when:
     A. One crime is an included crime of the other;
     B. One crime consists only of a conspiracy, attempt, solicitation or other form of preparation to commit, or facilitation of the other;

     C. The crimes differ only in that one is defined to prohibit a designated kind of conduct generally, and the other to prohibit a specific instance of that conduct; or
     D. Inconsistent findings of fact are required to establish the commission of the crimes.

**2.** 17–A M.R.S.A. § 1256(8) (Supp.1992) provides,
   8. No court may impose a sentence of imprisonment, not wholly suspended, to be served consecutively to any split sentence pre-

sentence that is "not wholly suspended" from following a split sentence in certain circumstances. Dadiego's first sentence was a split sentence, but the other three were wholly suspended, so they are specifically exempted from the prohibition of § 1256(8). The Legislature, by implication, intended to permit sentences which are "wholly suspended" to follow a split sentence and allow stacked probation terms.

Consecutive terms of probation may, in situations such as this one, allow a greater amount of restitution to be paid, at the same time facilitating rehabilitation.[3] Finding no authority to the contrary, we hold that consecutive terms of probation are permissible when the consecutive terms of imprisonment are warranted under 17–A M.R.S.A. § 1256(1)–(3).

### III.

 Contrary to Dadiego's contention, the order for restitution is neither ambiguous nor illegal. At the sentencing hearing, the court noted,

I am going to order restitution in the amount of two hundred seven thousand dollars, that will be a condition of your probation, and that will be paid at a minimum rate of $50.00 per week or 25 percent of your net income, whichever is higher, and that will be subject to review by the probation officer, so that if you do run into a windfall, as Mr. Gardener suggested, or if you just get a high paying job, that can be increased.

Dadiego argues that the statement contains internal inconsistencies and that if it is interpreted to require him to pay $207,000 it is excessive. It is clear that the court intended to require Dadiego to pay $50 a week over the sixteen year probation term unless changed circumstances enabled him to pay more. This is the amount that Dadiego suggested was appropriate. In

any event, Dadiego was to pay no more than a total of $207,000, the amount he appropriated from the Big Apple store. Just before imposing the restitution, the court noted that part of the rationale behind imposing consecutive sentences was "so that the victim will get back a larger share of the money that he's lost." The restitution order is neither ambiguous nor an abuse of discretion.

The entry is:

Judgment affirmed.

All concurring.

---

viously imposed or imposed on the same date, if the net result ... would be to have the person released from physical confinement to be on probation for the first sentence and thereafter be required to serve an unsuspended term of imprisonment on the second sentence.

